## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

GHEROGHE TUCA     *     CIVIL ACTION

VERSUS     *     NO. 05-5019

OCEAN FREIGHTERS, LTD., ET AL.     *     SECTION "L"(3)

### ORDER AND REASONS

Before the Court is the Plaintiff's Motion to Remand the above-captioned matter to the Civil District Court for the Parish of Orleans, State of Louisiana.  The motion came for hearing on January 18, 2005 with oral argument.  For the following reasons, Plaintiff's Motion to Remand is GRANTED.

### I.  Factual and Procedural Background

Plaintiff brings this action arising out of injuries he allegedly sustained on May 30, 2004 while he performed his duties as a seaman aboard the M/V PONTODAMON, a vessel owned by Sungleam Maritime, Ltd.  Ocean Freighters, Ltd. was Tuca's employer.  While the vessel attempted to berth at the Port of New Orleans, Tuca alleges that he was struck by a line which snapped off of a winch being used to berth the vessel.  Tuca was hospitalized in Jefferson Parish and allegedly suffered severe and permanent injuries to his right arm, left wrist, left foot and body as a result of the accident.

On April 30, 2004, one month before the injury, Tuca signed an employment contract with the manning agent Bright Balkan Shipping Services SRL, who was acting on behalf of Bright Balkan Maritime Corporation, who in turn was authorized by and acting on behalf of Defendant Ocean Freighters.  The employment contract stated that "[t]he full terms and conditions *governing the employment of the seafarer* are stated in the Agreement dated 15-

Novemeber [sic] 2001 between 'BRIGHT BALKAN SHIPPING SERVICES SRL', Constanta - Romania and 'BRIGHT MARITIME CORPORATION INC', Piraeus, Greece . . ." (emphasis added). The agreement between Bright Balkan Shipping Services SRL and Bright Maritime Corporation Inc. (hereinafter "Bright Balkan Agreement") included an arbitration clause stating that "[a]ny dispute arising out of [or] relating to *this agreement* which the *parties* will not be able to settle amicably, shall be finally settled by arbitration, . . . [t]he arbitration place being Piraeus, Greece" (emphasis added).

Tuca filed suit in Civil District Court for the Parish of Orleans on March 22, 2005 alleging negligence and unseaworthiness against Defendants. Defendants removed the case to this Court on October 20, 2005 arguing that general maritime law confers federal jurisdiction and that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") applies to this case, and as such this Court has original jurisdiction pursuant to the Convention Act, 9 U.S.C. section 203, *et. seq*.

On November 21, 2005, Plaintiff filed the present Motion to Remand, premising jurisdiction in state court upon the Jones Act, 46 U.S.C. section 688, and general maritime law under the saving to suitors clause, 28 U.S.C. section 1333. Plaintiff also argues that the Convention, for reasons discussed below, does not apply.

## II. Plaintiff's Motion to Remand

In support of his Motion to Remand, Plaintiff cites the well-pleaded complaint rule, arguing that his claim falls under the Jones Act and therefore is not removable without another basis for jurisdiction. Plaintiff argues that Defendants' use of the arbitration clause is an impermissible attempt to invoke the Court's jurisdiction using a federal defense.

Plaintiff also argues that this case does not fall under the Convention by attacking Defendants' contention that there is a written agreement to arbitrate, which is a prerequisite to federal jurisdiction pursuant to the Convention.  Plaintiff argues that the terms and conditions of Tuca's employment were governed not by Tuca's employment agreement but by a Special Agreement dated August 6, 2004 and made retroactively effective from May 5, 2004, between Sungleam Maritime, Ltd. and the Federation of Transport, Petroleum and Agricultural Workers of Cyprus.  Plaintiff contends that this Agreement contained no arbitration clause.

Plaintiff also argues that Tuca's employment agreement only incorporated the terms and conditions governing Tuca's employment and that the arbitration clause in question provided for arbitration between the parties to the Bright Balkan Agreement, rather than to a seafarer whose employment contract incorporates provisions of the Agreement.

Defendants argue that the Convention allows for removal even though the grounds for removal (e.g., the arbitration provision) are not present on the face of Plaintiff's complaint.

Furthermore, Defendants argue that the arbitration clause "falls under" the Convention because it satisfies the Fifth Circuit's test articulated in *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903 (5th Cir. 2005).

## III.  Law and Discussion

### A.  Plaintiff's Well-Pleaded Complaint

It is generally true that defendants cannot create federal jurisdiction by arguing federal defenses. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir. 1988)*;  see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Instead, a district court must determine whether federal jurisdiction exists by examining the plaintiff's well-pleaded complaint.  *Willy*, 855 F.2d at 1165.

However, an exception to this rule is applicable here.  The Convention provides that "the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal."  9 U.S.C. § 205.  Thus, the well-pleaded complaint rule does not apply when the Convention confers federal jurisdiction. *Caringal v. Karteria Shipping, Ltd.*, 108 F.Supp.2d 651, 653 n.5 (E.D. La. 2000) ("[T]he well-pleaded complaint rule and its independent corollary, the artful pleading doctrine, have no bearing on cases removed under the Convention Act.");  *see also Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 269 (2d Cir. 1996) (noting the Convention's explicit exception to the well-pleaded complaint rule).

The Convention is also an exception to the Jones Act's saving to suitors clause.  *See Francisco v. Stolt Achievement MT*, 293 F.3d 270, 272 (5th Cir. 2002) (stating that "notwithstanding the saving to suitors clause," if the claim falls under the Convention, the defendant may remove);  *Bautista v. Star Cruises*, 286 F.Supp.2d 1352, 1366-67 (S.D. Fla. 2003) (holding that personal injury claim was removable under the Convention notwithstanding plaintiff's contention that Jones Act cases cannot be removed), *aff'd*, 396 F.3d 1289 (11th Cir. 2003).

### B.  The Convention

The next question is whether the Convention Act confers federal jurisdiction in Tuca's situation.  A case may be removed pursuant to the Convention if the subject matter of the claim "relates to an arbitration agreement governed by the Convention." *Amizola v. Dolphin Shipowner, S.A.*, 354 F.Supp.2d 689, 692 (E.D. La. 2004);  *see also Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) ("[W]henever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' the

4

plaintiff's suit."). Specifically, the Convention provides:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205.

When a defendant seeks federal jurisdiction pursuant to the Convention, the Fifth Circuit provides that that defendant must prove that an action "falls under" the Convention by showing that a four-part test is satisfied. *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903 (5th Cir. 2005); *SEDCO, Inc. V. PEMEX*, 767 F.2d 1140, 1145 (5th Cir. 1985). First, there must be an agreement in writing to arbitrate the dispute. *Lim*, 404 F.3d at 903. Second, the agreement must provide for arbitration in the territory of a Convention signatory. *Id.* Third, the agreement to arbitrate must arise out of a commercial legal relationship. *Id.* Lastly, a party to the agreement must not be an American citizen. *Id.*

The Court will discuss in turn (1) whether the arbitration clause relates to Plaintiff's claim and, if so, (2) whether it falls under the Convention.

### 1. Whether the Arbitration Clause "Relates To" Plaintiff's Claim

Defendants have demonstrated that the arbitration clause relates to Plaintiff's claim despite Plaintiff's argument that the Special Agreement governs rather than Tuca's employment contract. "The phrase 'relates to' generally conveys a sense of breadth." *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002). In that spirit, courts have rejected arguments that the arbitration clause did not relate to plaintiff's claim when the arbitration clause was arguably unenforceable

5

or not directly connected to plaintiff.  *See id.* at 667-69 (holding that an arbitration agreement related to plaintiff's claim despite the argument that plaintiff was a non-signatory and therefore could not be compelled to arbitrate); *Lannes v. Operators Int'l*, No. 04-584, 2004 WL 2984327, at *4 (E.D. La. 12/20/04) (holding that an arbitration agreement related to plaintiff's claim when plaintiff was a non-signatory but also a third-party beneficiary of the allegedly breached contract).  Defendants need not show that the arbitration provision applies nor that Plaintiff will be forced into arbitration.  *Beiser*, 284 F.3d at 670-71.  Instead, Defendants merely must show that the arbitration provision "conceivably" applies.  *Id.*  They have done so here because the arbitration clause in the Bright Balkan Agreement is at least arguably applicable.  Tuca did sign the employment contract; the employment contract incorporates from the Bright Balkan Agreement the "full terms and conditions governing the employment of the seafarer"; and the Bright Balkan Agreement contains an arbitration clause.

Accordingly, the arbitration clause relates to plaintiff's claim.

### 2.  Whether the Arbitration Clause "falls under" the Convention

For the following reasons, the arbitration clause does not  "fall[] under" the Convention and Defendant has failed to satisfy the four-part *Lim* test.

Aside from the agreement in writing requirement, which is discussed below, the Convention's remaining requirements are easily satisfied.

The Convention's second requirement is met.  The arbitration clause provides that arbitration over "[a]ny dispute" shall be arbitrated in Piraeus, Greece.  Greece is a signatory of

the Convention.[1]  The Convention's requirement that the agreement must provide for arbitration in the territory of a Convention signatory is therefore satisfied.  *See Francisco*, 293 F.3d at 273 (holding that the Convention's signatory requirement was satisfied where the employment agreement stated that the plaintiff's claims were "subject to arbitration in the Philippines").

The Convention's third requirement is also satisfied. That is, the agreement to arbitrate arose out of a commercial legal relationship.  Seafarers' employment contracts, like the one signed by Tuca here, are considered commercial.  *Id.* at 274 (concluding that a seaman's employment contract arose out of a commercial legal relationship and that the Convention therefore applies); *see also Amizola*, 354 F.Supp.2d at 695.

The Convention's fourth requirement is also met because no party is an American citizen. There is no dispute that Plaintiff is Romanian.  Nor is there any dispute that Defendants are foreign entities and that the vessel, M/V PONTODAMON, is a Cypriot-flagged vessel. Accordingly, Defendants have met the fourth requirement.  *See Francisco*, 293 F.3d at 273 (noting that plaintiff was a Philippine national therefore satisfying the Convention's fourth requirement).

However, Defendants have failed to satisfy the first requirement of the Convention: that an agreement to arbitrate the dispute be in writing.  At the outset, and though not raised by the parties, it should be noted that the Fifth Circuit does recognize that an agreement to arbitrate can meet the Convention's definition of agreement in writing even though the parties did not sign it

---

[1]According to the website of the United Nation Commissions on International Trade Law, Greece ratified the Convention on June 16, 1962, and its effective date in Greece is October 14, 1962.  *See* www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html.

so long as the agreement to arbitrate is an arbitral clause in a contract.[2]  *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669 (5th Cir. 1993), *reh'g & reh'g en banc denied*, 21 F.3d 1110 (1994), *cert. denied*, 513 U.S. 871.  Thus, the fact that Tuca did not sign the Bright Balkan Agreement does not prevent federal jurisdiction.

Defendants argue that there is an agreement in writing to arbitrate this dispute because the Bright Balkan Agreement contains an arbitration clause which is incorporated into Plaintiff's employment agreement.[3]  The incorporation clause states that "[t]he full terms and conditions *governing the employment of the seafarer* are stated in the [Bright Balkan Agreement]" (emphasis added).  At oral argument, Plaintiff contested whether the arbitration clause was applicable by arguing that only the terms and conditions of the Bright Balkan Agreement pertaining to the seafarer were incorporated.  For the following reasons, the Court agrees.

According to the plain language of both Tuca's employment contract and the Bright Balkan Agreement, the arbitration clause is not incorporated into Tuca's employment contract, and, accordingly, there is no agreement in writing to arbitrate the dispute.

The language of a contract should be interpreted against the party from whom the words

--------

[2] At least two other circuits disagree with the Fifth Circuit, stating that a signature is required even when the arbitration provision is contained in an arbitral clause in a contract. *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3rd Cir. 2003) (agreeing with the Second Circuit on this point).

[3] Generally, agreements that incorporate agreements with arbitration clauses can satisfy the agreement in writing requirement.  *See Stony Brook Marine Transp. Corp. v. Wilton*, No. 94-5880, 1996 WL 913180, at *4-*5 (E.D.N.Y. 5/1/96) (holding that a commercial order slip that was "subject to" an agreement containing an arbitration clause was an agreement in writing); *see also Bautista*, 286 F.Supp.2d at 1361-64 (holding that an agreement that incorporated an agreement that incorporated a third agreement containing an arbitration clause was an agreement in writing).

proceeded.[4] *Zapata Marine Servs. v. O/Y Finnlines, Ltd.*, 571 F.2d 208, 209 (5th Cir. 1978)

("[W]hen a contract provision is subject to opposing, yet reasonable interpretation, an

interpretation is preferred which operates more strongly against the party from whom the words

proceeded."); *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 957 (5th Cir. 1974); *Continental

Grain Co. v. M/T Seabravery*, No. 88-4503, 1989 WL 50908, *1 (E.D. La. 5/3/89).  Thus, to the

extent there are reasonable, yet opposite, interpretations of Tuca's employment contract and the

Bright Balkan Agreement, any doubt should favor Tuca.

    However, a review of the relevant contracts leaves little to doubt.  Tuca's employment

contract, while broad in one sense because it incorporates the "full terms and conditions"

contained in the Bright Balkan Agreement is also narrow in that it only purports to incorporate

those terms and conditions "governing the employment of the seafarer."  This specific limiting

language begs the question: which clauses in the Bright Balkan Agreement govern the

employment of the seafarer?

    The Bright Balkan Agreement contains a total of twenty sections, seventeen of which

pertain to the terms and conditions governing the employment of seafarers and the last three of

which pertain to the relationships between the parties to the Bright Balkan Agreement.  It is in

these last three clauses where the agreement to arbitrate can be found, between a clause

pertaining to amending the Agreement and one pertaining to cancelling it.  Conspicuously absent

from the arbitration clause (and its neighbors) is any reference to "seafarer" or "employment,"

which is noteworthy because other clauses in the Bright Balkan Agreement pertaining to "terms

---

    [4]Here, although Ocean Freighters did not draft the agreement, its agent, Bright Balkan
Maritime did.

and conditions" of employment contain specific references to "employment" and "seafarers." *See, e.g.*, Bright Balkan Agreement, cl. 5 ("The ordinary hours of duty of all seafarers . . . ."); cl. 12 ("The seafarer shall be entitled to repatriation . . . ."); cl. 14 ("The principal has the right forthwith and without notice to terminate the employment of any seafarer . . . .").

Moreover, the arbitration clause's plain language indicates that "any dispute arising out of [or] relating to *this agreement*" (emphasis added) subjects the "parties" to arbitration. The clause is silent respecting whether disputes between seafarers and their employers are subject to arbitration. Considering the foregoing review of the relevant agreements and, to the extent necessary, the principle of contract interpretation favoring non-drafters, the arbitration clause is not one that governs employment of seafarers. It therefore does not subject Tuca–a non-party to the Bright Balkan Agreement–to binding arbitration.

Accordingly, there is no agreement in writing to arbitrate the dispute between Tuca and the Defendants. This action therefore cannot fall under the Convention, and there is no basis of federal jurisdiction other than the Jones Act. Thus, the matter must be remanded to state court. *See* 28 U.S.C. § 1445(a); *Zoila-Ortega v. B-J Titan Servs. Co.*, 751 F.Supp. 633, 636-37 (E.D. La. 1990).

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Remand is GRANTED. IT IS ORDERED that this case is REMANDED to the Civil District Court, Parish of Orleans, State of Louisiana.

New Orleans, Louisiana, this ___4th___ day of April, 2006.

_____
United States District Judge